STATE BANK OF NEW PRAGUE v. AMERICAN SURETY COMPANY OF NEW YORK.[1]

October 27, 1939.

No. 32,087.

[1] Reported in 288 N. W. 7.

138

*Orr, Stark & Kidder,* for appellant.
*Moonan & Moonan,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover indemnity for pecuniary loss sustained through the defalcation of its former cashier covered by a fidelity bond issued by defendant. The bond was dated February 24, 1933, and continued in effect from that date for one year. It provided for indemnity not to exceed $10,000 for pecuniary loss sustained by plaintiff as the employer of the cashier through the latter's fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misapplication, misappropriation, or any other criminal act or omission, while the employe held any position in plaintiff's service commencing from the date of coverage of the employe and continuing until the termination of the insurance.

The bond contained a provision to the effect that upon discovery by the employer of any loss insured thereunder the employer should within ten days thereafter give the defendant written notice thereof and within three months after such discovery file with defendant a written claim giving the particulars of such loss.

The complaint set forth two causes of action for losses which plaintiff paid to one Connors. The one alleged that in 1930 Connors deposited $1,700 and the other that on April 1, 1933, he deposited $800, for which plaintiff's former cashier was to issue certificates of deposit to Connors, and that he appropriated the money and gave Connors, who was illiterate and did not understand what was done, his personal promissory notes. It alleged that Connors recovered a judgment against plaintiff upon both causes of action, which plaintiff discharged on May 23, 1936, by payment of $2,000 in cash, of which $900.36 was in full for that part of the judgment based on the $800 item. The cause of action for the $1,700 item, being for a loss by an act which occurred prior to the issuance of the bond, was abandoned at the trial.

The bond showed without dispute that on April 1, 1933, defendant stood in relation of indemnitor to plaintiff for the alleged loss of $800. There was evidence to show that on March 8, 1935, Connors through his attorney made written claim on plaintiff for $2,500 and interest for the $1,700 and $800 items; that plaintiff immediately notified defendant of Connors' claim and discussed the matter with defendant's representatives; that it made diligent search of its records and found no evidence to substantiate a claim in favor of Connors; that it denied liability; that Connors commenced suit on the two causes of action and recovered a judgment for both of them with interest as claimed.

Plaintiff over defendant's objection showed the loss as to the $800 item by the judgment roll and relevant portions of the court's charge in the action in which Connors recovered judgment against it. The evidence in the Connors case, offered by plaintiff, was excluded on defendant's objection. In the Connors case

plaintiff asserted the same defenses to this claim, which defendant relies on here.

It claimed that the transaction of April 1, 1933, relative to the $800 item, was personal between Connors and the cashier, that the bank was not a party to nor concerned therein, that the promissory note evidenced the personal nature of the transaction, and that Connors, with knowledge of the fact that the note was given for the cashier's personal obligation, accepted payment of interest from him, waived the fraud, if any, and ratified the transaction. Both Connors and the cashier testified at the Connors trial. The court in its charge to the jury in the Connors case stated that Connors based his right to recover upon the claim that he deposited $800 with the bank on April 1, 1933; that defendant's defense was as outlined and that "so, in this case, if you find that the claims of the plaintiff have been established by the evidence and is true, then you would be warranted in finding a verdict in favor of the plaintiff," otherwise not, and that if the verdict was in favor of plaintiff he was to be allowed interest from April 1, 1933.

The evidence showed beyond dispute that there was a transaction involving $800 on April 1, 1933, between Connors and the former cashier. The question was what was that transaction. Immediately upon commencement of the Connors action, plaintiff notified defendant and requested it as such indemnitor to assume the defense, which it declined. The parties stipulated that plaintiff promptly notified defendant of the pendency of the Connors action, tendered it the defense, which it declined, and that defendant had a fair opportunity to defend if it had elected to do so. It was further admitted that plaintiff defended the Connors action as ably as could be. No claim or suggestion of fraud or collusion with respect thereto was made. The court below was of the opinion that the judgment in the Connors action was conclusive against defendant as to the fact of defalcation and the amount thereof and so held.

Then, subject to objection, it received the former cashier's testimony explaining the transaction, to the effect that on April 1,

1933, he gave Connors the $800 note in question not for the receipt of cash, but in renewal of a balance due to Connors on account of transactions which had their inception in the receipt by the cashier of $1,700 in cash from Connors' brother in 1930. This was the same testimony which he gave for plaintiff in defense of the Connors suit. Connors' death occurred before this case came to trial.

Findings were made as to the defalcation and amount thereof, based upon the Connors judgment; that plaintiff sustained loss by the payment of the Connors judgment in the amount of $900.36; that the policy covered the loss; and that plaintiff was entitled to recover the amount thereof with interest and costs.

Defendant assigns as error here on points raised below: (1) That the judgment in the Connors action was not admissible to prove the defalcation or the amount thereof, upon the grounds that defendant was not a party to that action; (2) that holding that the Connors judgment is binding on defendant denies to it due process of law; (3) that the defalcation was not within the coverage because, while it resulted from an act within the coverage period, it was not discovered until afterwards; (4) that notice of the discovery of loss and proof of claim were not given within the time limited by the policy; and (5) that it was not permissible to show that the parties agreed that $900.36 of the $2,000 paid in satisfaction of the Connors judgment was allocated as payment of the $800 cause of action.

■ A judgment recovered against an indemnitee upon an obligation covered by a contract of indemnity is conclusive against the indemnitor in an action by the indemnitee to recover indemnity, if the indemnitee gave the indemnitor notice of the pendency of the action in which the judgment was recovered and requested him to assume the defense. Milavetz v. Oberg, 138 Minn. 215, 164 N. W. 910; Trustees of First Presbyterian Church v. U. S. F. & G. Co. 133 Minn. 429, 158 N. W. 709; G. N. Ry. Co. v. Akeley, 88 Minn. 237, 92 N. W. 959; Note, 132 A. S. R. 759; 1 Freeman, Judgments (5 ed.) § 447; 34 C. J. p. 1031, § 1463. There must be identity of issues in the case in which the

judgment was recovered and the one in which the judgment is used as evidence. B. Roth Tool Co. v. New Amsterdam Cas. Co. (8 Cir.) 161 F. 709. The issues in the Connors and the instant case were identical as to the $800 item involved here. In both cases the transaction was admitted to have occurred on April 1, 1933, and the claim was that the transaction involved a deposit of money by Connors, which plaintiff's former cashier received, and the defense was that the transaction was only a renewal of a promissory note in a personal affair between the cashier and Connors to evidence the balance due on account of a precedent liability having its origin in the $1,700 transaction referred to in the first cause of action. The judgment in the Connors case definitely determined that the transaction of April 1, 1933, was a deposit of $800 which the cashier embezzled. Defendant seeks to escape the effect of the Connors judgment by the claim that loss occurred prior to the coverage, that the element of time was not a material issue in the Connors case and hence that it could show that the loss occurred prior to the coverage period. It may be conceded that time was not material, but the particular transaction was. The issue was whether the particular transaction was a deposit of cash by Connors with the bank or a renewal of the cashier's personal note. It was the determination of this issue that fixed the liability of the bank on the theory of receipt of money. The judgment is conclusive on defendant and was properly admissible to show its liability and the extent thereof to Connors. Of course the judgment did not prove that the defendant had indemnified plaintiff against the liability or other facts requisite to the insurer's liability. But those facts were established by other evidence.

■ Holding the judgment recovered by a claimant against the indemnitee in an action, the pendency of which he gave due notice to the indemnitor and which he requested him to defend, conclusive against the indemnitor in an action by the indemnitee to recover indemnity is not a denial of due process of law. Defendant's contention is that it was a stranger to, and not bound to try its defense in, the Connors action, citing and relying on

Brinkerhoff-Faris T. & S. Co. v. Hill, 281 U. S. 673, 50 S. Ct. 451, 74 L. ed. 1107; Chase Nat. Bank v. City of Norwalk, 291 U. S. 431, 54 S. Ct. 475, 78 L. ed. 894; and Postal Tel. Cable Co. v. City of Newport, 247 U. S. 464, 38 S. Ct. 566, 62 L. ed. 1215. None of these cases involved the question presented here, and hence they are not in point. In the Brinkerhoff-Faris T. & S. Co. case the action was brought to enjoin the state treasurer of Missouri from collecting a certain tax assessed against plaintiff's shares of stock. It was held that a change of rule of law by court decision whereby plaintiff was prevented from having a remedy was a denial of due process. In the City of Norwalk case, a judgment in a *quo warranto* proceeding, brought by the state, to which neither the city nor the trustee under an antecedent mortgage to secure bonds issued by a public utility were parties, ousting the utility from its franchise to use the city's streets, was held not binding on the trustee, since it was not a party to the action and did not stand in privity to any party concluded by the judgment. The court said that the law did not impose upon a party the burden of voluntary intervention in a suit to which he is a stranger. In the Postal Telegraph Cable Co. case the company was denied the right to show that it did not stand in privity to a company against which a judgment had been rendered in favor of the city. This was held to be error, since a judgment can be held conclusive only against parties or privies.

Where he is notified of the commencement of an action and tendered the defense, whether he appears or not, "the person responsible over is no longer regarded as a stranger, because he has the right to appear and defend the action and has the same means and advantages of controverting the claim as if he were the real and nominal party on the record." 15 R. C. L. p. 1017, § 489, notes 2 and 3, citing Pioneer S. & L. Co. v. Bartsch, 51 Minn. 474, 53 N. W. 764, 38 A. S. R. 511; Clarke v. Carrington, 7 Cranch (U. S.) 308, 3 L. ed. 354, by Chief Justice Marshall, and many other cases.

The indemnitor is bound in such a case not by the contract of indemnity, except where it expressly so provides, nor by the

judgment as a determination of the issue against him, but by estoppel *in pais*. Bower, Res Judicata, § 200, citing the judgments of Buller, J., in Duffield v. Scott, 3 Term Rep. 374; Parke, J., in Smith v. Compton, 2 B. & Ad. 407; and again, when Parke, B., in Jones v. Williams, 7 M. & W. 493. The reason that a judgment recovered against A is not binding against B is that B had no notice of the litigation nor opportunity to defend his claims therein. Even if B is notified and requested to come in as a party, he is not bound to do so because he owes no duty to defend in an action which is no concern of his. But when B is under duty by law or express contract to protect A against the claim asserted against him in the litigation, there is a duty on the part of B to A which the latter may demand that he perform, and, if he fail, he shall not afterwards be heard to say that he did not have an opportunity to be heard in opposition to the claim asserted against A. The estoppel to claim a right to be heard on the original issues between the claimant and A results from the refusal of B to accept the tender of such right when it was offered him and it was his duty to accept. Robbins v. Chicago City, 4 Wall. 657, 18 L. ed. 427.

Due process of law in this connection requires that a party have notice of the proceedings, that the trial be had according to the settled course of judicial proceedings, and the parties be afforded a full opportunity to be heard. No fixed procedure is required. An indemnitor may have such notice and hearing in the action by the claimant against the indemnitee. It is not important that the notice and hearing were had in an action to which the indemnitor was not a party. Where the indemnitor or party responsible over appears and defends the action, it is held that he has been accorded due process, not because of his participation in the proceedings, but because he had the notice and was afforded the opportunity of hearing, which are essential to due process. Louisville & Nashville R. Co. v. Schmidt, 177 U. S. 230, 20 S. Ct. 620, 44 L. ed. 747; Hoskins v. Hotel Randolph Co. 203 Iowa, 1152, 211 N. W. 423, 65 A. L. R. 1125, note, 65 A. L. R. 1134. In the Louisville & Nashville case the court said that the

due process clause [177 U. S. 236, 20 S. Ct. 622] "does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided in the proceedings which are claimed not to have been due process of law the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend." The difference between that and the instant case is that the person responsible over appeared and defended in that case while the defendant did not appear or defend here.

Defendant's argument is that a party responsible over must be "vouched" in as a party of record or he is not bound by the judgment. According to the ancient practice in actions based on warranty involving both real and personal property, the warrantor was brought in as the party to defend by special writs for the purpose, *i. e.* writ of voucher—the *summoneas ad warrantizandum*—and the *warrantia chartae*. 2 Pollock and Maitland, *History of English Law* (2 ed.) note, p. 71, and pp. 158, 163, 209, 662-664; 2 Chitty's Blackstone, Book 3, pp. 232, 233. The use of such writs was confined to a few actions, principally writs of entry, writs of right, and the *actio furti*. Where such writs were not allowable there often was reason for making the judgment binding on the party responsible over. In such cases, in analogy to those writs, notice to defend was given, and while such notice did not bring in the person responsible over as a party, it did conclude him by the judgment. Masser v. Strickland, 17 Serg. & Rawle (Pa.) 354, 17 Am. D. 668, 15 R. C. L. p. 1020, § 492. Rawle, Covenants for Title (5 ed.) p. 151, § 116, cites a judgment by Markham, C. J., during the reign of Edward IV [1461 to 1483] Year Book 8 Edw. IV, 11, holding that notice to defend bound a warrantor. The text says:

"Although these writs had become obsolete in England more than two centuries before they were abolished by statute, yet upon general principles notice of an adverse proceeding is there considered obviously proper in all cases where one having the benefit of any covenant of indemnity seeks to fix the liability of the covenantor by the same suit which decides his own."

Parties responsible over are no longer vouched in as parties of record. Instead they are notified to defend, which long ago superseded the technical voucher, and are concluded by the judgment. The practice of notifying the person responsible over to defend has become so well established that courts and text writers no longer deem it necessary to assign reasons for the rule. 2 Van Fleet, Former Adjudication, p. 1178, § 579, says:

"If the person sued gives due notice of the pendency of the suit to the one who is responsible over and requests him to assume the defense, all the cases agree that the latter will be concluded by the judgment rendered if sued upon his obligation by the former."

The practice of concluding a person responsible over by notice to defend, which has persisted as the law of the land for well nigh five centuries, if not longer, is not lacking in due process. It affords the notice and opportunity for hearing which are requisite. In Louisville & Nashville R. Co. v. Schmidt, 177 U. S. 230, 238, the court pointed out that all the requirements of notice and hearing can be afforded in such cases and that every defense may be asserted, fully considered, and ultimately decided. Since such notice is required to be given and the opportunity is afforded to assert defenses, the court held in Washington G. L. Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. ed. 712, that the judgment against the indemnitee bound the person responsible over where he was notified to defend, whether he appeared or not, in the same way and to the same extent as if he had been made a party to the record. Mr. Chief Justice White, then an associate justice, wrote the opinions in both the Louisville & Nashville R. Co. and Washington Gas Light Co. cases.

■ The policy does not expressly provide that it only shall cover losses discovered during the coverage period. Nor is it susceptible of that construction. The plain meaning of the language is that it covers losses resulting from acts of defalcation of the employe committed during the coverage period. Where, as here, the insurance is to indemnify the insured against loss through

the fraudulent and dishonest acts of his employe in connection with the duties of his employment, the insurance covers all losses due to such acts committed during the coverage term, whether discovered during that time or afterwards. United States v. Maryland Cas. Co. (4 Cir.) 299 F. 942; Mid-City T. & S. Bank v. National Surety Co. 202 Ill. App. 6. We decided Cary v. National Surety Co. 190 Minn. 185, 251 N. W. 123, and Farmers Co-op. Exch. Co. v. U. S. F. & G. Co. 150 Minn. 126, 184 N. W. 792, upon assumption that such was the rule.

Policy provisions requiring notice of discovery of loss within a stipulated period are limitations on liability coverage. Fitger Brg. Co. v. American Bonding Co. 115 Minn. 78, 131 N. W. 1067; City Bank of Portage v. Bankers L. Mut. Cas. Co. 206 Wis. 1, 238 N. W. 819.

Where there is doubt as to the meaning of such a policy it is construed in favor of the insured as providing for such coverage. The uniform practice in deference to such rule, where the intention was to limit the coverage to losses discovered during the coverage period, or within a certain time thereafter, has been to so provide in express terms in the policy. See American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. ed. 977. Policies sometimes require notice, not of loss, but of the dishonest act of the employe, Gamble-Robinson Co. v. Massachusetts B. & I. Co. 113 Minn. 38, 129 N. W. 131, or of any breach of contract which might result in loss. Fitger Brg. Co. v. American Bonding Co. 115 Minn. 78, 131 N. W. 1067. See, 25 C. J. p. 1096, § 7. The failure to include such a limitation in the policy involved here should be construed as showing an intention that there was to be none. Although the loss was not discovered until after the coverage period had expired, the policy covered the defalcation in question, since it occurred during the coverage period.

■ There was no failure by plaintiff to give notice of loss and file proof of claim within the time allowed by the policy. Defendant's position is inconsistent. On the one hand it contends that there was no pecuniary loss until the Connors judgment was paid, citing and relying on our express holding to that effect in

Cary v. National Surety Co. 190 Minn. 185, 251 N. W. 123, for the purpose of establishing that there was no loss within the coverage period. While the contention is sound, it is not, as we have pointed out, an avenue of escape. On the other hand, by adopting the defalcation as the time from which to compute the period within which notice of loss and proof of claim were to be filed, it in effect contends that the loss occurred at the time of the defalcation. Even though we might hold upon the record that notice of loss and proof of claim were given within due time from the date of the defalcation, it is not necessary to do so. The notice of loss and the proof of claim were given prior to loss, the Connors judgment having been paid about a year afterwards. Since the time for giving notice of loss and the filing of proof of claim runs from the discovery of loss, and the loss did not occur until the judgment was paid in money, there could be no discovery of the loss until that time. Hence the period within which notice of loss must be given and proof of claim must be filed runs from the time of the payment of the judgment as the time when the loss was discovered. In Cary v. National Surety Co. 190 Minn. 185, 191, 251 N. W. 123, 126, we so held and said: "If respondent [the insured] had given appellant [the insurer] notice of the loss within 10 days, and filed an itemized statement of loss within 90 days, after the payment on the judgment, he would have complied with the expressed terms of the contract."

In Fitger Brg. Co. v. American Bonding Co. 115 Minn. 78, 131 N. W. 1067, the insurance covered breach of contract by a builder employed by the insured. The policy required the insured to give notice of any breach of contract and to file proof of claim within a stipulated time after breach. We held that the breach of contract referred to was one creating liability on the bond and that to hold it meant other breaches within the requirement as to notice involved absurdity. So, here, the loss referred to is the same for purposes of notice and filing proof of claim thereof. The policy refers to only loss and does not warrant any distinction for purposes of notice and filing proof of claim.

But where, as here, the notice of loss is given and proof of claim is filed before payment of the judgment in money, and the insurer denies liability under the policy, such disclaimer of liability is a waiver of further notice of loss and the filing of another claim. Cary v. National Surety Co. 190 Minn. 185, 251 N. W. 123.

■ It was permissible for plaintiff and Connors to agree upon the proration of the money paid in settlement of the judgment. Defendant does not deny that the amount allocated to the $800 item is the amount of the recovery attributable to that item. Ascertainment of the amount is only a matter of calculation. There is no merit to the contention.

Affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

