**UNDERWRITING MEMBERS OF LLOYD'S IN LLOYD'S POLICY NO. 52342 et al. v. CALIFORNIA FRUIT GROWERS EXCHANGE et al.**

**No. 10287.**

Circuit Court of Appeals, Ninth Circuit.

June 14, 1943.

Chas. E. R. Fulcher, of Los Angeles, Cal., for appellants.

George E. Farrand, Ross C. Fisher, and Farrand & Farrand, all of Los Angeles, Cal., for appellee California Fruit Growers Exchange.

Mills & Wood, of Los Angeles, Cal., for appellee U. S. Fidelity & Guaranty Co.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

During 1937 one Jones was in the employ of appellee Fruit Growers Exchange. Between May 1 and November 1 of that year, through Jones' defalcations, Fruit Growers suffered a loss of $23,019.22. The United States Fidelity and Guaranty Company had issued to the employer a fidelity bond, referred to in the record as the "primary bond," limited in coverage to the sum of $1,000. This bond was in effect during the period of the defalcations. It contained no discovery clause, that is to say, it prescribed no time limit within which losses were required to be discovered in order to be claimable. The loss was discovered by Fruit Growers July 31, 1940, and the surety thereupon paid the full amount of the bond, namely $1,000.

Under date of November 1, 1936, Lloyd's Underwriters issued to Fruit Growers an "excess" fidelity policy in the amount of

$25,000 insuring the employer against loss occurring during the period commencing with that date and ending with the 1st of November, 1937. Clause 4 of this bond provided: "It is further understood and agreed that this excess insurance is subject to all the terms and conditions of the said Primary Bonds [i. e., the primary bond above mentioned] insofar as the same do not conflict with the terms and conditions herein contained." Clause 5 was in this language: "Warranted Free of all claim for losses occurring subsequent to the expiry date of this Policy and for losses not discovered during its currency, with the understanding that in event of non-renewal the Assured shall have a period equal to that provided by the Discovery Clause of the aforesaid Primary Bonds (but not exceeding three years) in which to discover losses claimable under this insurance."

Lloyd's policy was not renewed. As of its expiry date—November 1, 1937—the United States Fidelity and Guaranty Company issued to Fruit Growers its excess policy in the amount of $25,000 to cover losses · occurring during its term. The coverage of the latter policy extended also to losses occurring during the currency of Lloyd's excess bond but which were not discovered within the time limited for the discovery thereof by the provisions of Lloyd's bond. It is conceded here, as it was below, that one or the other of these companies is liable to Fruit Growers. The trial court thought the liability was that of Lloyd's Underwriters and it entered judgment accordingly.

The controversy waged between the sureties is as to the interpretation of clause 5 of Lloyd's bond. It is admitted, in the final analysis, that this clause must be interpreted as it would be if no excess policy had been issued to replace Lloyd's policy upon its expiry date, that is to say, as if the dispute were between Lloyd's and the assured. In brief, the argument for nonliability is this: since the primary bond contained no discovery clause, the liability on Lloyd's excess policy was limited to losses occurring and discovered during the latter's currency. Lloyd's contends that the language of clause 5 should be understood as though it read as follows: "Warranted Free of all Claim for losses occurring subsequent to the expiry date of this Policy and for losses not discovered during its currency, *whether this bond be renewed or*

*not,* with the understanding that in event of non-renewal the Assured shall have a period equal to that provided by the Discovery Clause of the aforesaid Primary Bond, *if the Primary Bond contains a Discovery Clause,* (but not exceeding three years), in which to discover losses claimable under this Insurance." The italicized phrases are those which Lloyd's says should be interpolated in order to arrive at a clear understanding of the meaning of its contract.

It was stipulated that at the time it issued its excess policy Lloyd's is presumed to have been familiar with the terms and conditions of the primary bond. If Lloyd's interpretation be accepted, it would follow that the second part of the clause served no purpose whatever and that Lloyd's was aware of that fact. Only the part thereof relieving Lloyd's of liability for current losses not currently discovered would bear meaning. Yet Lloyd's itself, in another connection, insists that an instrument should not be so construed as to render portions of it ineffectual.

<span style="background:black;color:black"></span> It is well understood that bonds guaranteeing the fidelity of employees, written as a business and for profit, are essentially insurance contracts; and in case of ambiguity the appropriate rules of construction are those applied to contracts of insurance. Limitations tending to defeat the general purpose of such contracts will not be given effect unless clearly and fully expressed. Joyce on Insurance (1918), Volume 4, § 2766, pp. 4608, 4609. Ambiguities in their phraseology ought to be and are resolved against the insurer. Hartford Accident & Indemnity Co. v. Swedish Methodist Aid Ass'n, 7 Cir., 92 F.2d 649, 652, and cases there cited.

<span style="background:black;color:black"></span> In the absence of express restriction, a fidelity bond covers losses occurring within its term, whenever discovered, so long as discovery is in time to permit of suit against the insurer within the period of the statute of limitations, State Bank of New Prague v. American Surety Co., 206 Minn. 137, 288 N.W. 7, which in this case was four years after the loss occurred, Cal.Code Civ.Proc. § 337. Rather than to treat the latter part of clause 5 of Lloyd's bond as referring to nothing and hence meaning nothing, we think it more reasonable to construe it as giving the same discovery rights as those afforded by the primary bond, but not ex-

ceeding three years. That construction lends substance to the whole of the clause and is in harmony with the purpose of affording indemnity to the assured.

It is urged that this construction renders a portion of the excess bond of the United States Fidelity and Guaranty Company meaningless and ineffectual. We think not. The latter bond did not undertake to absolve Lloyd's from any liability assumed by it. All it undertook to do was to afford coverage for losses occurring during the currency of Lloyd's policy which were not claimable under the terms of that bond.

Affirmed.