**BITUMINOUS CAS. CORP.**

v.

**TRAVELERS INS. CO. et al.**

**Civ. No. 4497.**

United States District Court
D. Minnesota, Fourth Div.
March 31, 1954.

**198**

Maugridge S. Robb (of Robb, Robb & Van Eps), Minneapolis, Minn., for plaintiff.

Thomas J. Spence, Kenneth W. Green, St. Paul, Minn., for defendant Travelers Ins. Co.

NORDBYE, District Judge.

The following recital of the pertinent facts and circumstances seems necessary. During January of 1952, one William L. Williams was engaged in the general hauling and trucking business at Rochester, Minnesota. He had one truck. It was registered in his wife's name and the Travelers Insurance Company had issued an automobile liability policy on this vehicle. The occupation of the insured was noted in the policy as that of "lime hauler". Williams' hauling and trucking activities were concerned primarily with the hauling of lime from the Rochester Quarry to various farms in the vicinity of Rochester, Minnesota. This hauling was part of a program of lime distribution to farmers sponsored by the federal government through the Production Marketing Administration as part of its soil conservation program. The Rochester Quarry Company made bids to the Government with reference to the furnishing of such lime and agreed to deliver it to the farmers in certain townships in one or more counties adjacent to Rochester at the price of $2 per ton. The bid of the Quarry Company was accepted and the arrangement between the Government and the farmers was that the farmer who received the lime should pay one-half of the purchase price and the Government pay the other half. In the performance of this contract with the Government, the Quarry Company arranged with Williams to deliver the lime and the arrangement between the Quarry Company and Williams was that Williams should furnish his truck and haul the lime to the farmers designated by the Quarry Company at the rate of 70 cents per ton. Under this arrangement, Williams would truck the lime from the quarry to the farmer designated by the Quarry Company and then collect from the farmer the latter's share of the delivery price which would be at the rate of $1 per ton. Of the sum thus collected, Williams would retain 70 cents

per ton for his share and remit to the Quarry Company at the rate of 30 cents per ton. Thereafter, the Quarry Company would submit proof of delivery of the lime to the farmer and would receive compensation from the Government at the rate of $1 per ton.

On January 18, 1952, Williams was at the quarry getting his truck loaded with lime. The lime had to be screened so as to be of the required fineness in order to be spread on the land. A screen was placed on the top of the truck box and Williams stood on the box of the truck with a hand shovel so that he could check the screening of the lime and shovel out the chunks which were too large to pass through the screen. Apparently there was a stock pile of lime near the quarry and a power shovel was used to load the lime from the stock pile into the truck. An employee of the Rochester Quarry Company, one Ed Wegman, operated the power shovel. When the truck was about one-fourth full of lime, and as the shovel was about to deposit more lime into the truck, something happened to the power shovel; according to Wegman, a gear slipped or jumped. In any event, Wegman could not control the arm which held the shovel and the arm kept swinging. As he tried to lower the shovel to the ground, he was not able to avoid contact with the truck and the shovel hit Williams, thereby injuring him.

Williams brought an action in the State Court against the Quarry Company and Wegman. The complaint in that action alleged Wegman's negligence in the operation of the power shovel and the Quarry Company's liability therefor on the basis of respondeat superior. It was further alleged that the Quarry Company itself was negligent in the maintenance of the power shovel. In no manner did the complaint expressly allege that the accident happened in the process of loading or unloading Williams' truck. The Bituminous Casualty Corporation was the insurer of the Quarry Company under a so-called comprehensive general liability policy and the Quarry Company tendered the defense to Bituminous, which in turn tendered it to Wegman and the Travelers Insurance Company, which had issued the automobile liability policy on Williams' truck. Wegman ignored the tender and Travelers refused the tender of the defense. The action proceeded to trial with Bituminous defending the Quarry Company. Trial was had before a State Court district judge sitting without a jury, and an award of $9,000 was returned in favor of Williams and against the Quarry Company and Wegman. Judgment was thereafter entered on the award, and after the payment by Bituminous, the latter brings this action as subrogee of the Quarry Company seeking to be indemnified by Travelers Insurance Company and Wegman for the amount of $9,000 paid in satisfaction of the judgment and also for reasonable attorneys' fees in the sum of $733.15. Bituminous' payment of the judgment assumed to satisfy it only as to the Quarry Company and not as to Wegman. The Bituminous policy contained the usual subrogation clause. Bituminous, as subrogee of the Quarry Company, proceeds against Wegman on the common law theory that where as a result of the servant's tort a principal has to respond to a third party in damages, the servant may be held responsible to the principal for the loss. Bituminous proceeds against Travelers on the theory that Wegman and the Quarry Company were additional insureds under the Travelers policy in that the omnibus clause in the Travelers policy provided that the unqualified word "insured" should not only include the named insured but also "includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the actual use of the automobile is by the named insured or with his permission." "Use" is defined as including the *loading* and *unloading* of the automobile. There is no question but that Bituminous provided coverage for the Williams accident under its policy, but it contends that under the terms thereof Travelers became solely responsible for this loss.

No claim is made on behalf of Travelers that the truck was being loaded without the permission of the named insured. The question then arises whether Wegman, the operator of the steam shovel, was "using" the Williams truck within the meaning of the Travelers policy. In that "use" includes loading, it seems reasonably clear that the Williams truck was being used by Wegman and the Quarry Company at the time the accident occurred. But in "loading" must there be a causal relation between the injury and the truck or its driver, or is it sufficient under the "loading" clause that there be a causal connection between the injury and the process of loading? The loading and unloading clause obviously increases coverage beyond that of the usual "ownership, maintenance and use" clause, and the scope of the increased coverage is a matter on which courts have taken different views. See, Note 160 A.L.R. 1259. But it seems evident as disclosed by the admitted facts herein that Wegman was "loading" the truck within the meaning of the loading and unloading clause of the Travelers policy. That is, the accident occurred while Wegman was in the act of depositing the truckload of lime into the truck. This truck was not provided with any self-loading device and the only way that it could be loaded would be by hand or by some outside instrumentality. The hazards incident to the unloading, therefore, seem within the scope of the express terms of the policy. Travelers' position is that before a case can come within the loading and unloading provisions of an automobile policy, the instrumentality causing the damage must be the truck itself or the operator of the truck. But the injury to Williams would not have occurred but for the loading of the truck, and since Travelers expressly insured against liability arising out of the loading, without regard to who was doing the loading, it would follow that Wegman in loading the truck and using it for that purpose, was an insured within the meaning of the express terms of the policy and that the incident was caused by the operation, that is, in the process of loading the truck by the insured.

The cases relied upon by Travelers in support of its position that the vehicle being loaded or the vehicle's operator must be the efficient and predominating cause of the accident may be distinguished on the ground that in each of the cases referred to the operations were such that the process of loading or unloading had nothing to do with the accident. Thus, in Ferry v. Protective Indemnity Co., 1944, 155 Pa.Super. 266, 38 A.2d 493, where the injury was caused by a trucker who opened a cellar door over which plaintiff tripped, the process of loading had not commenced; and in Zurich General Accident & Liability Ins. Co. v. American Mutual Life Ins. Co., 1937, 118 N.J.L. 317, 192 A. 387, where an iceman, while placing ice in a customer's icebox, injured the customer with an icepick carried in his pocket, the process of unloading had been completed; and in Maryland Cas. Co. v. United Corp. of Mass., D.C.Mass.1940, 35 F.Supp. 570, where oil was pumped from a truck into a leaky tank and the leaky tank was the cause of the damage, the process of unloading had been completed; and in Handley v. Oakley, 1941, 10 Wash.2d 396, 116 P.2d 833, where a boy was hit by a batted ball while standing next to an ice cream truck waiting for his ice cream, it was held that the injury was not caused by the unloading such as if the boy had been struck by a container from the truck.

But here the injury was caused by the very operation specifically covered by the Travelers automobile policy; and it would seem that there is sufficient causal connection to come within the coverage of the Travelers policy if the injury is caused by the process of loading. That such is the case here seems clear. Bituminous has cited several cases where the negligence causing the damage was caused neither by the truck driver nor by the truck itself and the accident has been held covered by the policy insuring the truck. Panhandle Gravel Co. v. Wil-

son, Tex.Civ.App., 1952, 248 S.W.2d 779; Lowry v. R. H. Macy & Co., Sup., 1952, 119 N.Y.S.2d 5; Wagman v. American Fidelity & Casualty Co., 1952, 304 N.Y. 490, 109 N.E.2d 592, 593. In all of these cases, however, the definition given to the loading and unloading clause may be broader than that which would be given by the Minnesota Supreme Court, Franklin Co-op. Creamery Ass'n v. Employers L. A. Corp., Ltd., 200 Minn. 230, 273 N.W. 809; St. Paul Mercury Indemnity Co. v. Standard Accident Insurance Co., 216 Minn. 103, 11 N.W.2d 794, but the cases are authority for the proposition urged by Bituminous that if the accident is caused by loading or unloading, it is immaterial that the truck or its operator did not cause the injury. A case directly supporting Bituminous' position is U. S. Fidelity & Guaranty Co. v. Church, D.C.N.D.Cal.1953, 107 F.Supp. 683, where the insurer of the truck was held liable under its unloading clause where a third person in unloading the truck negligently injured the plaintiff, another workman, and the truck or its driver had nothing to do with causing the accident. Accordingly, it would seem that since the injury was caused by the loading of the truck, the causal relation is sufficient to make Wegman and the Quarry Company additional insureds under the omnibus clause of the Travelers automobile policy issued to Eleanor Williams.

The evidence introduced at this trial did not establish any affirmative negligence on the part of Wegman at the time that Williams was injured. The only testimony as to the manner in which the accident happened was given by Wegman and his position was that for some reason unbeknownst to him, he could not control the arm which held the shovel and that the arm kept swinging; that he tried to lower the shovel so as to avoid any contact with the truck, but was unable to avoid hitting Williams. However, Bituminous contends that the finding of negligence as to Wegman in the State Court is res adjudicata as to both of these defendants. Travelers, however, contends it was under no duty to defend

either the Quarry Company or Wegman. The basis for this position is that the complaint in the State Court action did not disclose that the injury to Williams was occasioned by loading operations and that the duty to defend a lawsuit is determined by whether the complaint states a cause of action within the coverage of the policy. It is not readily apparent from the complaint in the State Court suit that the injury to Williams was incurred in the process of loading the truck. But in the tender that was made to Travelers to defend, Travelers was specifically informed that Williams was injured in the process of loading the Williams truck by the negligence of Wegman, and that under the Travelers policy there was, therefore, coverage. The fact that the complaint did not set forth in detail a factual basis for Travelers' coverage did not relieve Travelers of its duty to defend when notice of the actual facts in the tender indicated that the injury to Williams was one covered by its policy. If the rule were otherwise, then in order to be defended by his insurer, the insured would be required to move the court for an amendment of the pleading against him. Surely, such procedure would not be required when the insurer is possessed of all of the facts which bear upon the coverage of its policy. Hardware Mutual Casualty Co. v. Hilderbrandt, 10 Cir., 1941, 119 F.2d 291; State Bank of New Prague v. American Surety Co. of N. Y., 1939, 206 Minn. 137, 288 N.W. 7. See, also, State ex rel. Inter-State Oil Co. v. Bland, 1945, 354 Mo. 622, 190 S.W.2d 227; Marshall's U. S. Auto Supply Inc. v. Maryland Cas. Co., 1945, 354 Mo. 455, 189 S.W.2d 529.

As indicated, Bituminous, as subrogee of the Quarry Company, proceeds against Wegman on the theory that it was Wegman's negligent act which proximately caused the injury to Williams. But if Wegman was an insured under the Bituminous policy, as well as under the Travelers policy, it follows that Bituminous had the duty to defend Wegman as well as the Quarry Company. The policy which Bituminous issued to the Quarry

Company was a comprehensive contract of insurance which generally covered the quarry operations of that concern. The crane and shovel which was used in loading the lime into the Williams truck constituted an integral part of the quarry operations. Concededly, the Bituminous policy covered the accident to Williams, and under its contract Bituminous was obligated to defend and indemnify the Quarry Company. But under the terms of that policy, not only was the named insured covered, but under Section III of the insuring agreements it was provided,

"The unqualified word 'insured' includes the named insured and also includes * * * under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *."

And "use" of the automobile in the Bituminous policy, as in the Travelers policy, included the *loading* or *unloading* thereof. As noted above, the Bituminous policy specifically covered automobiles which were either owned or hired by the insured. The policy contains the following definitions,

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile—an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

"(3) Non-owned Automobile—any other automobile."

The question arises, therefore, whether the Williams automobile was a hired automobile within the meaning of the Bituminous policy. If it was, then in that Wegman was loading the automobile when the accident happened and was using the automobile for the purpose of loading the lime at the express direction of the Quarry Company, it necessarily follows that the Bituminous policy covered both Wegman and the Quarry Company.

The delivery of the lime by the Quarry Company to the farmers who participated in the soil conservation program was a specific requirement of the contract which the Quarry Company made with the Government. The arrangement that the Quarry Company made with Williams assumed to fulfill the delivery provisions of that contract. To all practical purposes, therefore, there was a joint venture between the Quarry Company and Williams in the fulfillment of the Government contract. The Williams truck was used under a bilateral contract; that is, under a contract between the Quarry Company and Williams for the purpose of enabling the Quarry Company to fulfill its contract with the Government. Williams was required under the contract to deliver the lime to the farmers designated by the Quarry Company. He was required under the contract to collect from the farmer the latter's share of the tonnage price for the lime delivered. He was required under the contract to remit to the Quarry Company the amount collected from the farmer at the rate of 30 cents per ton. The term "hired automobile", generally speaking, refers to a vehicle used under a contract of rental. But it is evident that the provisions in this policy contemplated a broader and more comprehensive coverage than that. Otherwise, the term "hired automobile", without any other definition or amplification, would have been utilized. Therefore, not only a loaned automobile but any automobile used under contract in behalf of the Quarry Company would be considered as a hired automobile within the definition

which the policy contains. A strict construction, therefore, of the term "used under contract in behalf of * * * the named insured" is not suggested. That the Quarry Company was using the Williams automobile is implicit from Bituminous' position in this proceeding in its claim against Travelers. That the automobile was being used under contract in behalf of the Quarry Company likewise is implicit from the arrangement which was made between the Quarry Company and Williams. The Court is constrained to find, therefore, that the language used in this definition of a hired automobile is broad and comprehensive, and the interpretation accorded thereto should be free from any narrow or strict construction. The Williams truck was a hired automobile and not a non-owned automobile, as these terms are defined in the Bituminous policy.

The State Court in the Williams suit found that Wegman was negligent in loading the Williams truck. That finding, therefore, fixed the liability of the Quarry Company and Wegman in that that issue necessarily was tried and determined in the Williams suit. Travelers is bound by that finding of fact. Moreover, that the accident to Williams occurred in the process of loading the truck appears affirmatively from the evidence in this proceeding, and whether, therefore, the court in the Williams suit could have rendered judgment thereon without determining the issue of whether the accident occurred in the process of loading the Williams truck seems of no controlling importance herein. The negligence of Wegman was an issue that had to be determined in that suit. All of the facts, therefore, which establish coverage of the Travelers policy are either res adjudicata or are uncontroverted in this proceeding.

From the foregoing, it would appear that both Bituminous and Travelers provided coverage for the Williams accident—Bituminous under its comprehensive policy, together with the provision affording coverage for the loading of the Williams truck, and Travelers by reason of the use of the Williams truck by the Quarry Company and Wegman, with the consent of Williams, and the accident resulting during the process of the loading thereof. The liability of each insurer stems from Wegman's negligence. However, Bituminous contends that its insurance affords coverage only in excess of the coverage afforded by Travelers. Its claim in this regard rests upon Condition 13 of its policy, which provides,

*"Other Insurance. If the insured has other insurance* against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any *non-owned* automobile shall be excess insurance over any valid and collectible insurance *available to the insured,* either as an insured under a policy applicable with respect to such automobile or *otherwise."* [Emphasis supplied.]

However, this Court has determined herein that the Williams car was not a "non-owned automobile" as that term is defined in the policy, and hence it follows that the excess insurance provision relied upon is not applicable. Moreover, it seems clear that Bituminous' pro-rata provision as noted in Condition 13 cannot be utilized in this proceeding because the Quarry Company did not have other insurance against the loss resulting from the Williams accident. The term "other insurance", as noted in Condition 13, obviously refers to other insurance purchased by the Quarry Company. And while the Travelers afforded the Quarry Company coverage under its policy for the Williams accident, such insurance was not insurance which had been purchased by the Quarry Company. In any event, if Bituminous' pro-rata provision applies, the result herein would be the

same in view of the conclusions hereafter indicated.

Travelers contends that the Quarry Company is the primary tort-feasor, and since the Quarry Company was found liable by reason of the negligence of Wegman, and in view of the comprehensive coverage by Bituminous of the Quarry Company's operations, it is urged that Bituminous had the primary risk and that Travelers had only secondary liability. Travelers refers to certain language in St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co., supra, 216 Minn. at page 110, 11 N.W.2d 794, in support of its contention that only hazards involving the automobile itself are covered by an automobile policy and that the risks occurring in the general business concern are usually covered by a general liability policy. But the St. Paul Mercury Indemnity case was concerned with the interpretation of the unloading clause in an automobile liability policy. The comments of the court in that case do illustrate the practice of insurance underwriters to write general comprehensive liability policies to cover all risks incident to the carrying on of a business and to write automobile policies to cover the risks becoming incident to the operation of automobiles, and to which risks the general operations of the business are not generally subject. And although the underwriters may not have anticipated or contemplated over-lapping or concurrent coverage as between general comprehensive policies and automobile liability policies, nevertheless that result has come about since the phrase "loading and unloading" has been introduced in the standard automobile policy. And where there is this over-lapping of coverage, it is difficult to find a basis for concluding, under the circumstances herein, at least, that one has the primary risk and the other has only secondary liability merely because one policy is comprehensive in its coverage and the other is limited to automobile liability. And this seems necessarily true in absence of some contract limitation, under the circumstances of the Williams accident, which is expressly set forth in the policy provisions. Here, no distinction should be made as to the liability of these insurers merely because in one policy we have a named insured and in the other insurance protection to unnamed persons by reason of the omnibus clause in the policy. This situation does not make the former the primary insurer and the latter only secondarily liable where the policies extend concurrent coverage. Travelers asserts, however, that if there was concurrent coverage herein, then Clause 13 of its policy limits its coverage on a pro-rata basis. The pertinent portion of that clause reads,

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss;  *  *  *."

The Quarry Company being insured under the Travelers policy in the loading of Williams' car, with Williams' consent, and the Quarry Company having purchased other insurance, to wit, the Bituminous policy, which covers the Williams loss, it necessarily follows that effect must be given to Clause 13 of the Travelers policy. In this limitation as to liability, we find the only pertinent provision in the two policies which furnishes an applicable pro-rata provision of contribution as between these two insurers under the circumstances herein. Examination of the respective policies discloses that the Bituminous policy provides for a $20,000 and $40,000 limit for each person and each accident, and the Travelers policy limits are $10,000 and $20,000 for each person and each accident respectively; and applying these pro-rata provisions to the $9,000 award in the Williams action, which Bituminous paid, it follows that Bituminous should be responsible for $6,000 and Travelers for $3,000 of this loss. The expense of counsel and disbursements made in con-

nection with the Williams litigation should likewise be pro-rated on the same basis.

■ In view of the foregoing, no relief will be granted Bituminous as against Wegman.

Findings of fact and conclusions of law in harmony herewith may be presented upon ten days' notice. An exception is reserved.