# ARCH B. FARRELL AND ANOTHER v. NEBRASKA INDEMNITY COMPANY.[1]

March 13, 1931.

No. 28,256.

*Eloi Bauers* and *Smith, Callahan & Carlson,* for appellant.
*Denegre, McDermott, Stearns, Stone & Mackey,* for respondents.

HILTON, J.

Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

This is an action brought by plaintiffs to recover the amount paid by them in settlement of two personal injury actions and for attor-

[1]Reported in 235 N. W. 612.

neys' fees necessarily paid in said litigation, the defendant having refused and failed to defend therein. Plaintiffs had a verdict for $4,062, which included $875 for attorneys' fees and $187 interest. Defendant had made a motion for a directed verdict at the close of the evidence.

Plaintiffs, a partnership, used six motor trucks in their business as road contractors. Defendant insured them against loss or expense resulting from claims upon them for damages by reason of the ownership, maintenance, manipulation, or use of such trucks (the indemnity policy limitations were $7,500 for the death of any one person and not to exceed $10,000 when more than one person was injured). Defendant also agreed in the policy "to defend in the name and on behalf of the Assured, any suit against the Assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death suffered or alleged to have been suffered by any person or persons * * *" and to pay the costs of so defending.

On April 3, 1928, an accident occurred resulting in the death of one woman and serious injuries to another. Based on said accident, on December 17, 1928, two actions were commenced against plaintiffs and one Muraski (a driver of one of their trucks). One was brought by the administrator of the estate of the deceased woman to recover $7,500, and one by the other woman demanding $41,000 for permanent injuries sustained.

The indemnity policy among other things provided:

"Upon the occurrence of any loss or accident under Section One hereof, the Assured shall give immediate written notice to the Company at its Home Office in Omaha, Nebraska, or to its authorized agent, with the fullest information obtainable at the time."

No such notice was given until one day after the commencement of the two actions. Defendant at once claimed to have been relieved from liability because of the failure to give notice sooner and declined to defend.

■ A team attached to a buggy in which both women were riding ran away while going in a northerly direction on paved highway

No. 63. The shoulders of this highway were being constructed by plaintiffs with their trucks and employes. The buggy passed plaintiffs' truck (operated by Muraski) which was headed in a southerly direction on said highway. The fatal accident occurred soon thereafter.

One of the plaintiffs was a mile away from the scene of the accident. He saw the team running away but did not see the accident. On the next day, having heard of the accident, he made an investigation. He interviewed the six truck drivers and particularly Muraski. He was told by the latter (the only one of them who knew anything about the occurrence) that neither he nor the truck had anything to do with the accident; there was nothing to indicate to the contrary. Muraski told him and afterwards testified that he saw the running horses approaching when they were 500 or 600 feet away; that he immediately pulled his truck to the right side of the highway and stopped; that the running team went by him. The evidence of plaintiffs shows that from the investigation made they believed and definitely decided that they were in no way to blame for and had no connection with the accident; for that reason they did not notify defendant.

No claims for damages were made against plaintiffs until December 17, 1928 (eight and one-half months after the accident) when a summons and complaint was served in each action. They had no reason to believe that any claims would be made or actions started.

Was the investigation made by plaintiffs a reasonable one and one that justified them in reaching the conclusion that they were in no way responsible for the runaway and the accident that happened? The verdict of the jury was an affirmative answer. The evidence warranted such a finding.

As to what is a reasonable time within which to give notice to an insured depends upon the facts and circumstances of each case. Cases in which the length of time was a week, a month, a year or more, in and of themselves, are not determinative. Instances might arise where a very short time would be unreasonable; others where a long period of time would be reasonable. Under proper instruc-

tions the court submitted the question of reasonable notice to the jury.

Cases cited by defendant holding that the time elapsing between the occurrence of the accident involved in each and the giving of notice therein was unreasonable are distinguishable on their facts, particularly those wherein assured had knowledge of the accident and the circumstances indicated liability on the part of assured. Some of them present situations where after the investigation the assured "was in doubt" as to whether there was any liability. Such cases are not in point. Plaintiffs here were not in doubt. The investigation made and the information obtained justified them in concluding that "without doubt" there was no liability on their part.

Illustrations offered or cases cited, wherein two automobiles collided and the assured made no report because upon inquiry the driver of assured's car stated that the accident was not his fault, are without force here. In this case there was no collision; plaintiffs relied upon the statement of Muraski. There being nothing indicating to the contrary, they were justified in believing him; the jury so thought.

Although an assured pays to an insurer a required premium for the purpose of securing protection, the latter is entitled to expect and require notice which under the circumstances will be reasonable. The expression "immediate notice" means within a "reasonable time under all the circumstances." The court properly instructed the jury on that point by saying:

"The words 'immediate notice' as used in this policy mean notice given within a reasonable time after the occurrence of the event under or on account of which a claim may be made. If the plaintiffs had no reasonable ground for believing that any act or omission by them or their employes was the cause of the running away of the team, they were not required to give any notice until they became aware of the fact that a claim was to be made upon that ground. Now, if you find from the evidence that the existing conditions and facts of which the plaintiffs had knowledge would not

warrant a reasonable man in believing that any claim would be made against Farrell & Clark, then they were not obliged to give notice until such a claim was made."

There followed further correct statements along the same line. The converse of the proposition was also properly submitted, and the jury was instructed as to its duty in case it found that the notice given was not a reasonable one.

It was seriously contended by plaintiffs that the jury should have been instructed as a matter of law that the notice given was in sufficient time. Where the facts are not in dispute a question of law only is involved. Possibly the instruction should have been given. However the court took the other view, of which defendant cannot complain. Where different inferences may properly be drawn from the evidence, there is a question of fact for the jury. The evidence justified the jury in finding that from plaintiffs' knowledge of the accident there was no reasonable basis for them to attribute it to any act or omission on their part. There being here, to say the least, sufficient supporting evidence, the conclusion of the jury must stand. Fletcher v. German-Am. Ins. Co. 79 Minn. 337, 82 N. W. 647; C. S. Brackett & Co. v. General A. F. & L. Assur. Corp. Ltd. 140 Minn. 271, 167 N. W. 798; Minnesota E. D. Co. v. U. S. F. & G. Co. 173 Minn. 114, 216 N. W. 784, and cases cited; Chapin v. Ocean A. & G. Corp. 96 Neb. 213, 147 N. W. 465, 52 L.R.A. (N.S.) 227; McKenna v. International Ind. Co. 125 Wash. 28, 215 P. 66; 14 R. C. L. p. 1330.

To hold that defendant under the circumstances should be absolved from liability because of the failure to give earlier notice would be unreasonable, unwarranted, and a grave injustice. The record does not disclose that defendant was in any way prejudiced by the delay.

█ The complaints in the two actions charged in effect that while approaching the truck at a distance of at least 300 feet the team became frightened; that the driver got control of the horses so that they were not running, though still prancing and jumping about when approaching the truck; that the driver of the truck

proceeded at a high and dangerous rate of speed, making a lot of noise; that he negligently so ran and operated the truck as to cause the horses to become frightened and run away, causing the resultant injuries. During the trial of the instant case it appeared that positive testimony in support of the allegations of the complaints was available, the plaintiff in the $41,000 action being an eyewitness who would testify to the alleged facts. After negotiations with counsel for plaintiffs in the two actions, a settlement was made for $3,000 ($1,500 in each case) which plaintiffs paid.

Counsel for plaintiffs in this action and counsel for plaintiffs in the other actions were witnesses and gave testimony which showed that the settlements were made in absolute good faith. There was no collusion between them. It was not "made to appear affirmatively that there could have been no recovery had the action been tried." Plaintiffs here were entitled to recover. Butler Bros. v. American Fidelity Co. 120 Minn. 157, 170, 139 N. W. 355, 44 L.R.A.(N.S.) 609.

When confronted with suits aggregating $48,500, based upon complaints containing allegations which if proved and believed would establish the negligence of Muraski (plaintiffs' servant) a difficult and dangerous situation was presented. Under the evidence there was ample justification for making the settlement, which was, both from the standpoint of plaintiffs and defendant here, a most favorable one. As far as the record discloses, there were only three witnesses to the events that transpired prior to and at the time the buggy passed the truck. On of these witnesses was killed. The others were Muraski and the plaintiff in the $41,000 action, who suffered spine and head injuries.

With Muraski testifying as he did in this case and the plaintiffs' witness testifying in accordance with the allegations of the complaints, there would be a fact issue for the jury's determination. If verdicts were rendered upon conflicting evidence, placing the negligence upon Muraski (in the absence of errors occurring at the trial) such verdicts, if not excessive, would doubtless be sustained. The combined verdicts would likely be many times larger than the amount for which settlements were made. Wise discretion and sound judgment were exercised in making them.

We have considered all of the assignments of error and find no ground for reversal.

Order affirmed.

STONE, J. took no part.