## STANDARD ACCIDENT INS. CO. v. TURGEON.

### No. 3874.

Circuit Court of Appeals, First Circuit.

Jan. 13, 1944.

Hoyt W. Lark and Hart, Gainer & Carr, all of Providence, R. I., for appellant.

Henry M. Boss, of Providence, R. I., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and SWEENEY, District Judge.

MAHONEY, Circuit Judge.

This is an action on a contract of liability insurance brought by Evangeliste Turgeon, the insured, against his insurer, Standard Accident Insurance Company, to enforce the provisions of the insurance policy by which the insurer agreed to pay damages for which the insured was legally liable arising out of injuries from an accident sustained by reason of insured's business operations. A judgment in an action of tort was recovered against Turgeon in the State Court for the negligent causing of injury to one Floyd. The defendant insurance company agreed to and did defend Turgeon in that action but without prejudice to itself and refused to pay any portion of the judgment which was recovered. After Turgeon paid the judgment this suit was brought in the courts of the State of Rhode Island and was then removed to the Federal District Court where it was tried before a jury, jurisdiction being based on diversity of citizenship.

A verdict was returned for the plaintiff and judgment entered thereon in the court below. The defendant insurance company now appeals from the refusal of the trial judge to direct a verdict in its favor. The defense rested on the ground that the insured had failed to comply with the notice provision of the policy in that he had failed to give "immediate written notice" of the accident. The insured gave no notice of the accident to the insurer until almost seven months thereafter when the tort action was brought against him. If there was a duty to notify, a seven months' delay is unreasonable as a matter of law and does not comply with the requirement of immediate written notice unless "there were the excuses of disability, ignorance of the accident itself, or that the injury was due to the accident and the like." Sherwood Ice Co. v. United States Casualty Co., 40 R.I. 268, 100 A. 572. At page 280 of 40 R.I., at page 574 of 100 A., the Rhode Island court also pointed out that the fact that the insurance company was not prejudiced by the delay is immaterial.

The policy required as a condition precedent: "Upon the occurrence of an accident, irrespective of whether or not a claim for damages appears reasonably probable, the Assured shall give immediate Written Notice thereof * * * to the Company * * *. He shall give like notice, with full particulars, of any claim made on account of such accident * * * The conditions and obligations imposed upon the Assured * * * are hereby declared to be Conditions Precedent to the liability of the Company under this Policy, and the failure of the Assured to comply with any one of said conditions will Forfeit his right to any one of the benefits or protection provided by this Policy." We must, of course, construe this language the way it would be construed by the courts of the State of Rhode Island but we have found no Rhode Island case dealing with this provision. The phrase "irrespective of whether or not a claim for damages appears reasonably probable" means "even if it does not appear reasonably probable that a claim will be made". Thus notice must be given on the occurrence of an accident "even if it does not appear reasonably probable that claim will be made". It seems to us that the phrase "irrespective of whether or not a claim for damages appears reasonably probable" obliges the insured to give notice without regard to his reasonable belief as to his liability and even without regard to his reasonable belief as to whether or not anyone will even so much as make a claim of liability—that

it goes so far as to require notice if in reason there is even so much as a remote possibility that a claim for damages will ever be made. Thus in practical effect it requires notice of any accident in which the insured or his employees have been involved. And since the policy binds the insurer to defend any suit brought against the insured with respect to any accident within the coverage of the policy even though such suit should be "wholly groundless, false or fraudulent", the phrase as above construed does not impose an unreasonable burden upon the insured. Of course, if Turgeon had no knowledge that he was involved in an accident, if he could reasonably believe that he was not involved in an accident, he would be excused from giving notice. See Sherwood Ice Co. v. United States Casualty Co., supra, 40 R. I. at page 268, 100 A. 572; Farrell v. Nebraska Indemnity Co., 1931, 183 Minn. 65, 235 N.W. 612; Vande Leest v. Basten, 241 Wis. 509, 6 N.W.2d 667; Cf. Malloy v. Head, 1939, 90 N.H. 58, 4 A.2d 875, 123 A.L.R. 941.

The following facts were stipulated. Turgeon was engaged in performing a contract for the Paragon Worsted Company for the addition to a manufacturing building. Under the terms of the contract he was required to remove a fire escape from one end of the building. The fire escape was constructed of metal grille work and consisted of a series of stairs that led from a stone or cement step in the ground to some double doors in the building. Turgeon's men removed this fire escape on October 1, 1939, a Sunday. One of Turgeon's men was admitted into the building by the day watchman, "went up to the second floor of the building, opened the double doors, got out onto the fire escape and loosened the necessary bolts so as to permit it to be removed. These double doors were made of wood which swung out. They had no handles, locks or latches such as are found on ordinary doors. One of the doors was fastened to the floor through a hole by a rod and was never used. The other door was fastened by means of a spring catch at the top. In order to release this door it was necessary to pull the chain which would release the catch and allow the door to be opened." When the fire escape had been removed, Turgeon's man pulled the doors to and left the building. The day watchman saw the work being done. When Floyd, who was employed by the Paragon Worsted Company as night watchman, came on duty that same night of the afternoon on which the fire escape had been removed, he was not told of its removal. At the completion of his second round, with the building in darkness, he opened the door which led out onto the fire escape, and assuming that it was there, stepped off and fell to the ground. Severely injured, he was removed to the Rhode Island Hospital where he remained until January 20, 1940.

▮ Turgeon testified that two or three days after the accident his son, Fred, who had been on the job told him of the accident and how it had occurred; that it had happened after the fire escape had been removed and that the man had fallen off the doorway. Turgeon further testified that he did not know that the fire escape was used as a stairway; that his son told him that his man had told the day watchman to lock the door, and that he had been a contractor for forty-five years and that he had had a great many policies of liability insurance. He did not notify the insurer until he received a letter from an attorney on behalf of the injured man on April 27, 1940. When he then notified the insurer he stated that the reason for the late notice was that he believed that the injured man was protected under his employer's compensation insurance. At the trial he testified as to the reason, " * * * I didn't think it had anything to do with me. This man was working for the Paragon Mill and I thought he was all protected by them, and I didn't think it had anything to do with me." Under Rhode Island law an injured employee may accept Workmen's compensation and still sue a negligent third person. McArthur v. Dutee W. Flint Oil Co., Inc., 50 R.I. 226, 146 A. 484.

▮ On these facts it is undisputed (1) that Turgeon's servants in the course of their employment removed the support upon which the night watchman was accustomed to rely, (2) that the night watchman, not knowing that the familiar support had been removed, stepped out the door and fell to his injury, (3) that the acts of Turgeon's servants in the prosecution of his business operations, therefore, were in fact a cause of the accident, and (4) that Turgeon knew that his servants had thus caused the accident. Under these circumstances, Turgeon was obliged by the terms of the policy to give immediate notice of the accident to the insurance company, regardless of whether he might, as a reasonable man,

have thought that he was not legally liable or that the injured man would seek indemnity from some other source. The lower court was in error in denying defendant's motion for a directed verdict.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court, with direction to enter judgment for the defendant; appellant recovers costs.

SWEENEY, District Judge (dissenting).

If any tort was committed by Turgeon or his employees, it was an act of omission in failing to properly barricade the door on the second floor. There is nothing in the stipulated facts or in the reported evidence which shows that Turgeon knew or had reason to believe that such a tort had been committed by his employees. In an action of tort brought by Floyd against Turgeon there can be no doubt that Turgeon would be held liable for any tortious act committed by his servants in improperly barricading the doorway, whether Turgeon knew of such tortious action or not, for the act of the servant within the scope of his employment is the act of the master. But the present action is an action on a contract of insurance. I can find no Rhode Island case directly on the point, but the weight of authority on the question of an insured's duty to report an accident covered by the policy is that the knowledge of an employee of a tortious act which caused or contributed to another's injury is not imputed to the master as a matter of law. See Mandell v. Fidelity & Casualty Co., 170 Mass. 173, 49 N.E. 110, 64 Am.St.Rep. 291; Empire State Surety Co. v. Northwest Lumber Co., 9 Cir., 203 F. 417; Wolverton v. Fidelity & Casualty Co., 190 N.Y. 41, 82 N.E. 745, 16 L.R.A.,N.S., 400. Authority to the contrary is centered in two Minnesota cases: Northwestern Telephone Exchange Co. v. Maryland Casualty Co., 86 Minn. 467, 90 N.W. 1110, and Hagstrom v. American Fidelity Co., 137 Minn. 391, 163 N.W. 670. Applied to the facts in this case, the rule is that Turgeon was bound to report this accident when he knew, or, acting as a reasonable man, should have known that some act on his part or on the part of his servants had contributed to or caused Floyd's injury.

I can find nothing in the record which demonstrates positive knowledge on Turgeon's part that Floyd had fallen as a result of anything that he or his men had done or had failed to do. It is true that Turgeon learned within a couple days after the accident that Floyd had fallen from the doorway. This fact was susceptible of the interpretation that the cause of his fall may have been entirely attributable to the person who was in possession of the building, who happened to be Floyd's employer. The reported testimony indicates that Turgeon so interpreted it. Whether or not, on the information that Turgeon received from his son, he should have known as a reasonable man that he was connected with the accident is a question of fact. This is the question which the court submitted to the jury with proper instructions. The real test for the timeliness of notice is, as stated in Sherwood Ice Co. v. United States Casualty Co., 40 R.I. 268, 100 A. 572, a reasonable time under the circumstances of the case.