**ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, Plaintiff,**

v.

**WABASH FIRE AND CASUALTY IN-
SURANCE COMPANY, Defendant.**

Civ. No. 3–65–333.

United States District Court
D. Minnesota,
Third Division.

March 2, 1967.

Altman, Geraghty, Leonard & Mulally, by Ralph E. Koenig, St. Paul, Minn., for plaintiff.

Dudley, Smith, Copeland & Belisle, by G. William Smith, St. Paul, Minn., for defendant.

## MEMORANDUM DECISION

MILES W. LORD, District Judge.

As subrogee to the rights of Olson Transfer Company, St. Paul Fire and Marine Insurance Company seeks to recover as an omnibus insured under a policy of insurance issued by Wabash Fire and Casualty Insurance Company to Bluff City Lumber Company. Wabash Fire and Casualty Insurance Company denies coverage on the following grounds:

(1) That Olson Transfer Company is not an omnibus insured because the injuries did not arise out of the use of a Wabash-insured vehicle;

(2) That Olson Transfer Company failed to comply with the notice requirements of the Wabash policy; and

(3) That coverage is excluded by the "employee exclusion" provisions of the Wabash policy.

The St. Paul Fire and Marine Insurance Company is an insurance company incorporated under the laws of the State of Minnesota and the Wabash Fire and Casualty Insurance Company is an insurance company incorporated under the laws of the State of Indiana.

On January 16, 1961, and at all times herein pertinent, the St. Paul Fire and Marine Insurance Company had in full force and effect its automobile liability policy No. 266JM3124, wherein Olson Transfer Company was the named insured and which declared as the insured vehicles a 1950 White truck bearing Serial No. 386165. This policy also provided coverage for trailer units 50T, 55T and 56T, and contained the standard bodily injury insurance agreement and definition of the unqualified word insured, as well as the following provisions:

"19. Subrogation—Coverages A, * * *: In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

"20. Other Insurance Coverages A, * * *: If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *."

The limit of liability under this policy is Fifty Thousand Dollars ($50,000.00) per each person injured in a given accident.

On January 16, 1961, and at all times pertinent, the Wabash Fire and Casualty Insurance Company had in full force and effect a policy of automobile liability insurance No. AC25660 issued to Bluff City Lumber Company as named insured and which declared as the insured vehicle a 1953 Chevrolet truck, Serial No.

W53J25586403. That policy contained the following provisions:

"I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

\* \* \* \* \* \*

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy for bodily injury liability * *, the company shall:

(a) defend any suit against the insured alleging such injury * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *;

(b) * * * (4) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;

and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

"III. Definition of Insured: (a) With respect to the insurance for bodily injury liability * * * the unqualified word 'insured' includes the named insured * * * and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or * * * with the permission of either. * * *.

"IV. Automobile Defined, * *: (a) * * * (1) Described Automobile—the motor vehicle or trailer described in this policy. * * *.

"EXCLUSIONS

"This policy does not apply:

\* \* \* \* \* \*

"(d) under coverage A, to bodily injury * * * of any employee of the insured arising out of and in the course of * * * employment by the insured.

"(e) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.

\* \* \* \* \* \*

"CONDITIONS

"1. Notice of Accident—Coverages A, * * *: When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and available witnesses.

"2. Notice of Claim or Suit—Coverages A and B: If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

\* \* \* \* \* \*

"6. Severability of Interests—Coverages A and B: The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

"7. Action Against Company—Coverages A and B: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy * * *.

\* \* \* \* \* \*

"20. Other Insurance—Coverages A * * *: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the

declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *.

* * * * * *

"25. Purpose of Use: * * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

The limit of liability under this policy is One Hundred Thousand Dollars ($100,000.00) per each person injured in a given accident.

On January 16, 1961, and at all times pertinent, Bluff City Lumber Company, a Minnesota corporation, was located in Stillwater, Minnesota, and carried on a business of selling lumber and materials to the public; owned and operated the 1953 Chevrolet No. W53J25586403 in its operation; employed one Carl Erlitz as a manual laborer in its operation, who at all times herein was in the scope and course of his employment.

On January 16, 1961, and at all times pertinent, Olson Transfer Company of Stillwater, Minnesota, was a trucking firm engaged in local freight delivery; was the owner and operator of the 1950 White tractor Serial No. 386165 and trailers 50T, 55T and 56T; had in its employ one Paul Segelstrom in the capacity as a driver who at all times was in the course and scope of his employment.

On January 16, 1961, at about 8:30 o'clock A.M., Olson, in the course of its business dispatched Segelstrom to deliver overhead doors to Bluff City using the 1950 White tractor and one of the trailers 50T, 55T and 56T. On arrival, Segelstrom backed his truck trailer into Bluff City's warehouse through a doorway fronting on the south side of Olive Street, a street running east and west, entry being made over the sidewalk forming a driveway from the street to the doorway. Segelstrom stopped his vehicle facing north, standing across the sidewalk with the trailer extending into the building about 30 feet, on an area of floor visibly sloping downward toward the south. Upon receiving instructions from his supervisor in the course of his employment to place the overhead doors on the 1953 Chevrolet, Erlitz positioned it back to back with the Olson truck, some five to ten feet away. As Erlitz was carrying the first 12-foot long package of overhead doors from the Olson truck toward the 1953 Chevrolet, the Olson truck rolled backward striking Erlitz, pinning him against the 1953 Chevrolet and injuring him. Segelstrom was not familiar with the vehicle he was driving and had received no instructions from Olson Transfer Company as to how to safely park it on a grade, how to set its brakes, or whether idle speed would maintain sufficient air pressure to operate the brakes. When Segelstrom backed the truck into the lumber yard, he parked it by setting the brakes. Segelstrom did not place any blocks behind the wheels of the truck he parked. At the time of the injury Segelstrom was inside the trailer pushing on a 12-foot long package of overhead doors and Erlitz was on the ground carrying it on his shoulder. Nothing had been loaded onto the Bluff City truck at the time the injury occurred.

At the time of the accident the only apparent injuries to Erlitz were of a very minor nature. It was not until late in 1962 that more serious injury became apparent.

Olson Transfer Company gave St. Paul Fire and Marine Insurance Company written notice of loss on January 17, 1961, at which time this insurance company made a brief investigation of the accident. Erlitz commenced action for his injuries November 6, 1964, against Olson Transfer Company and Segelstrom. St. Paul Fire and Marine Insurance Company accepted the tender of the defense to it from Olson under its policy 266JM3124 and referred the defense to Attorneys Altman, Geraghty & Mulally. The case was tried commencing May 12, 1965. The attorneys for Olson Transfer, Paul Segelstrom and St. Paul Fire and Marine Insurance Company and in their behalf tendered the defense, gave notice of the lawsuit, and offered to provide defendant herein with the entire file in-

cluding pleadings and investigation on May 6, 1965, receipt of which is acknowledged by defendant herein. Counsel for Wabash did not appear nor in any way participate in the trial or settlement of the case, nor was any action taken by or in behalf of Wabash Fire and Casualty Company to protect its interests. The case was tried to a conclusion by counsel retained by St. Paul Fire and Marine Insurance Company, which resulted in a verdict against both Olson Transfer Company and Paul Segelstrom of Seventy-eight Thousand Dollars ($78,000.00) and was ultimately settled thereafter for the sum of Forty-five Thousand Dollars ($45,000.00). The St. Paul Fire and Marine Insurance Company incurred attorneys' fees, investigation costs, etc., in the sum of Two Thousand Four Hundred Seven and 48/100 Dollars ($2,407.48) in the handling of the case. All of these sums were paid by the St. Paul Fire and Marine Insurance Company under its policy No. 266JM3124.

Since it appears, and the defendant concedes, that the accident occurred during the loading of the Bluff City truck, the basic issues, upon which St. Paul Fire and Marine's right to recover as an omnibus insured under the Wabash policy turns, are the following:

1. Did the injuries suffered by Erlitz arise out of the loading of the Bluff City truck?

2. Did Olson Transfer Company adequately comply with the notice requirements of the Wabash policy?

3. Does the term "the insured" in the employee exclusion provisions of the Wabash policy refer only to the insured seeking protection under the policy, or does it refer also to the named insured?

■ It is the Court's view that the injuries suffered by Erlitz arose out of the loading of the Bluff City truck. This was the conclusion in a nearly identical case, Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F.Supp. 197 (D.C. Minn.1954). The only difference is that in that case the instrumentality causing the injury was a power shovel being used in the process of loading the insured

truck and in the instant case the instrumentality causing the injury was another truck being used in the process of loading the Bluff City truck. Judge Nordbye stated the problem as follows:

" * * * [M]ust there be a causal relation between the injury and the truck or its driver, or is it sufficient * * * that there be a causal connection between the injury and the process of loading? * * *." Id. at 200.

Judge Nordbye answered the question as follows:

" * * * [T]he injury to Williams would not have occurred but for the loading of the truck, and since Travelers expressly insured against liability arising out of the loading, without regard to who was doing the loading, it would follow that Wegman in loading the truck and using it for that purpose, was an insured within the meaning of the express terms of the policy and that the incident was caused by the operation, that is, in the process of loading the truck by the insured." Ibid.

■ Defendant argues that any acts of negligence on the part of Olson Transfer Company (whether in parking the vehicle, maintaining its brakes, or failing to instruct Segelstrom as to proper parking technique) occurred before the transfer of goods from the Olson truck to the Bluff City truck, and, therefore, the negligence causing the accident was too remote from the loading process to have arisen therefrom. In support of this argument defendant cites Gamble-Skogmo, Inc., v. St. Paul Mercury Indemnity Co., 242 Minn. 91, 64 N.W.2d 380 (1954). In this case the issue was whether an accident arose out of the unloading of a vehicle. The negligence which caused the accident was the failure of Gamble-Skogmo to properly and adequately instruct its employee as to the technique of assembling a swather hitch and tilting bar. Assembly was necessary before the implement could be unloaded. The Minnesota Supreme Court concluded that the accident did

not arise from the unloading because the "negligent act causing the injury \* \* was removed from the unloading operations both in the sense that it occurred prior to the accident and also some distance away from the scene of the accident." Id. at 64 N.W.2d 392–393. However, the *Gamble-Skogmo* case is distinguishable. The cause of the accident involved in the instant action was not nearly so remote as to either time or space. The jury found both Segelstrom and Olson Transfer Company to have committed negligence proximately causing the accident. Segelstrom's negligence could only have occurred at the premises of Bluff City Lumber Company. Moreover, Segelstrom's acts of negligence recurred upon his failure to rectify them the instant it was determined that the Bluff City truck would be backed up behind the Olson truck to receive the goods.

 The Court concludes that Olson Transfer Company adequately complied with the notice requirements of the Wabash policy. Because only minor injuries were apparent when the accident occurred, Olson Transfer Company could not have been aware that an act or omission on its part was likely to become the basis of a claim for relief. Under these circumstances Olson Transfer Company was under no obligation to give notice until November 6, 1964, when Erlitz commenced his action. See Minnesota Farm Bureau Serv. Co. v. American Cas. Co., 167 F.Supp. 315, 318 (D.C.Minn. 1958), and the cases therein cited. Nor was the delay from November 6, 1964, to May 6, 1965, unreasonable, since after the passage of nearly four years from the date of the accident the passage of an additional six months was in no way prejudicial. Nor does the fact that Wabash received notice only six days prior to the trial of the Erlitz case render the notice inadequate, since Wabash could have, but did not, seek a continuance of that action to enable itself to make an independent investigation. The following language of the Minnesota Farm Bureau Serv. Co. case, id., at 318–319, is pertinent:

"What constitutes a reasonable time within which to give notice of the accident or occurrence or of the fact that a suit has been commenced, depends on the facts and the circumstances of the case. The Supreme Court of Minnesota in analyzing the question of whether the notice was reasonable and timely under the circumstances has considered important the question of whether the rights of the insurer have been prejudiced, and it has held that notice was reasonable and timely where no prejudice resulted to the insurer from a delayed notice. Farrell v. Nebraska Indemnity Co. [183 Minn. 65, 235 N.W. 612], supra; Williams v. Cass-Crow Wing Cooperative Association [224 Minn. 275, 28 N.W.2d 646], supra; Standard Salt & Cement Co. v. National Surety Co., 134 Minn. 121, 158 N.W. 802; Cary v. National Surety Company, 190 Minn. 185, 251 N.W. 123; Gamble-Skogmo, Inc. v. St. Paul Mercury Indemnity Co., 242 Minn. 91, 64 N.W.2d 380.

"The evidence in this case does not show that the defendant was prejudiced because of delayed notice of the claims and the institution of suits in connection with this matter until January 1955. It is the opinion of this court that under the circumstances the notice given by the plaintiff in this case was reasonable and timely; and that the evidence does not show that the defendant was prejudiced because it was notified of the pendency of the suits five days before the date set for trial as the evidence discloses that the defendant might have secured a continuance to prepare for defense had it made such request. The opportunity of the defendant to investigate in this case was as good at the time it received notice from the plaintiff as it was at the time plaintiff originally received notice of the claims."

Defendant cites as controlling the case of Heimlich v. Kees Appliance Co., 256 Wis. 356, 41 N.W.2d 359 (1950), in which the Wisconsin Supreme Court held that while lack of prejudice relieves an insured from the duty of timely notice,

it will not excuse a condition requiring the summons and complaint to be forwarded immediately. This decision, however, does not represent the law in Minnesota. See Minnesota Farm Bureau Serv. Co. v. American Cas. Co., supra. It is based upon a view that lack of prejudice excuses tardy notice only by virtue of a Wisconsin statute which must be strictly construed. Minnesota's doctrine that lack of prejudice is a primary factor in determining the reasonableness of delayed notice is of judicial origin, based on considerations of public policy, and, therefore, is applied as well to conditions requiring immediate forwarding of the summons and complaint.

■ The Court construes the term "the insured" in the employee exclusion provisions of the Wabash policy to refer not only to the insured seeking protection under the policy, but also to the named insured. Plaintiff contends that this term should be construed to refer only to the insured seeking coverage under the policy because this term is ambiguous, and ambiguities are to be resolved in favor of the omnibus insured. However, the Minnesota Supreme Court has recently construed the term "insured" in a similar employee exclusion provision to refer to the named insured as well as the insured seeking protection under the policy in an opinion rejecting both the contention that the term "insured" is ambiguous and the contention that ambiguities are to be resolved in favor of an omnibus insured. G. C. Kohlmier, Inc. v. Mollenhauer, Minn., 140 N.W.2d 47 (1966). The Court indicated that ambiguities are to be resolved in favor of the named insured's interest in low premiums by prevention of overlapping coverage rather than in favor of the omnibus insured's contrary interest in expansive coverage. The relevant language of the *Mollenhauer* opinion is the following:

"As for the argument that any ambiguity should be resolved against the insurer, we may answer that not only does no ambiguity exist but also that if any ambiguity does exist, it should be resolved in favor of the named insured who must eventually bear the cost of excess coverage.

\* \* \* \* \* \*

" \* \* \* [A]n insurance policy is to be liberally construed in favor of the named insured—not necessarily, as appellant would like to think, in favor of an unnamed insured who happens to be asserting relief thereunder."

Id., 140 N.W.2d at 52.

■ Plaintiff seeks to distinguish *Mollenhauer* on the ground that the policy construed therein did not contain a "severability of interest" clause, and the Wabash policy presently being construed by the Court does contain such a clause, providing as follows: "The term 'the insured' is used severally and not collectively." No Minnesota case has been found which construes an employee exclusion provision in a policy containing a "severability of interest" clause. Arguably, the presence of a "severability of interest" clause introduces an element of ambiguity into the employee exclusion provisions of the Wabash policy not present in the *Mollenhauer* case. However, under the rationale of the *Mollenhauer* decision, this ambiguity is of no help to the instant plaintiff, for it must be resolved in favor of the named insured's interest in low premiums and, therefore, against the interest of the omnibus insured in expansive coverage. Moreover, it appears that the Minnesota Supreme Court anticipated and rejected plaintiff's argument, that *Mollenhauer* is distinguishable from the instant case because it did not involve a "severability of interest" clause, when it formulated the rule contained in its syllabus in that case:

"Under an omnibus insurance policy, when (a) the employee of a named insured is injured; (b) the person being sued therefor is an omnibus insured who is not an employee of the named insured; (c) the insurance policy excludes coverage of bodily injury to 'any employee of the insured'; and (d) the word 'insured' is defined in the policy to include both the named

insured and the omnibus insured, the effect of the exclusion clause is to deny the omnibus insured coverage *in the absence of an express, clear, and concise statement in the contract to the contrary*." (Emphasis added) The "severability of interest" clause of the Wabash policy can hardly be considered an "express, clear, and concise statement in the contract to the contrary".[1]

It appears that the Eighth Circuit concurs in this Court's interpretation of the term "the insured" in employee exclusion provisions of insurance policies containing "severability of interest" clauses. See Hanover Ins. Co., Mass. Bonding Dept. v. Travelers Ind. Co., 318 F.2d 306 (8th Cir. 1963). In this case a Federal District Judge was confronted with a posture of Missouri law identical to that of Minnesota law confronting the instant Court. Missouri cases involving policies without "severability of interest" clauses had construed the term "the insured" to refer to the named insured as well as to the insured seeking protection under the policy. However, no cases had construed the term "the insured" in employee exclusion provisions of policies containing "severability of interest" clauses. The District Judge held that the presence of the "severability of interest" clause did not alter the construction of the term "the insured", and the Eighth Circuit affirmed.

■ Thus, although the accident arose from the loading of the Bluff City truck, and Olson Transfer Company adequately complied with the notice requirements of the Wabash policy, the St. Paul Fire and Marine Insurance Company is not entitled to recover as an omnibus insured because coverage is precluded by the employee exclusion provisions of the Wabash insurance policy.

Consistent with the foregoing analysis, the Court makes the following conclusions of law:

1. The Court has jurisdiction by virtue of diversity of citizenship and the controversy exceeds Ten Thousand Dollars ($10,000.00).

2. Olson Transfer Company and Paul Segelstrom were insureds within the meaning of the definition of insured under defendant's policy No. AC 25660 at the time of the accident of January 16, 1961, and are entitled to all benefits of coverage afforded by that policy.

3. The accident and injury to Carl Erlitz on January 16, 1961, arose out of the loading of the 1953 Chevrolet, Serial No. W53J25586403 which was insured at that time under defendant's policy No. AC 25660 and the use was with the permission of the named insured.

4. The settlement of Forty-five Thousand Dollars ($45,000.00) paid to Carl W. Erlitz under the policy was reasonable and provident; and the attorneys' fees, investigation costs and other costs in the amount of Two Thousand Four Hundred Seven and 48/100 Dollars ($2,407.48), paid in connection with the handling of the case, were necessarily incurred and were reasonable in amount.

5. The St. Paul Fire and Marine, Olson Transfer Company and Paul Segelstrom gave reasonable notice of claim and notice of the existence of the lawsuit in accordance with the requirements of defendant's policy.

6. St. Paul Fire and Marine, by virtue of its payment of Forty-five Thousand Dollars ($45,000.00) in settlement of the Erlitz claim and the payment of Two Thousand Four Hundred Seven and 48/100 Dollars ($2,407.48) for attorneys' fees, investigation costs, etc., under its policy, is subrogated to and has succeeded to the rights of Olson Transfer Company and Paul Segelstrom to the

1. While it can be argued that the observation of the Court in the *Mollenhauer* case that the policy involved had no "severability of interest" clause indicates that it might reach a different decision in a case involving a policy containing such a clause, it can as well be argued that the Court's observation indicates that it was not unmindful of "severability of interest" clauses when it chose the "express, clear, and concise" language used in its syllabus.

extent of these payments under defendant's policy No. AC 25660.

7. St. Paul Fire and Marine is not entitled to recover because coverage is excluded by the provisions of the policy which provide that this policy does not apply "to bodily injury * * * of any employee of the insured arising out of and in the course of * * * employment by the insured," or to "any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation * * * law * * *."

8. Wabash Fire and Casualty Insurance Company is entitled to its costs and disbursements.

Let judgment be entered accordingly.