**LORAM MAINTENANCE OF WAY, INC., Respondent,**

v.

**CONSOLIDATED RAIL CORPORATION, Respondent,**

**The Home Insurance Company, Respondent,**

**Federal Insurance Company, Appellant.**

**No. C5–83–2051.**

Court of Appeals of Minnesota.

Sept. 4, 1984.

*findings of fact regarding the financial resources and needs of the child.*

Act of April 25, 1984, ch. 547, § 16, Minn. Laws 938.

Peter S. Hendrixson, David Y. Trevor, Dorsey & Whitney, Minneapolis, for respondent Loram Maintenance of Way, Inc.

Sylvester F. Doffing, William J. Hennessy, Jacobowski, Doffing & Hennessy, St. Paul, for respondent Consol. Rail Corp.

Leon R. Erstad, Chadwick, Johnson & Condon, P.A., Minneapolis, for respondent The Home Ins. Co.

Leo G. Stern, Michael A. Trittipo, Fredrikson & Byron, P.A., Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG, and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by appellant Federal Insurance Company (Federal) from a judgment entered against Federal and Consolidated Rail Corp. (Conrail) as a result of a property damage loss by respondent Loram. The action was tried to the court pursuant to a stipulation of facts and documents. Federal appeals, contending that the trial court erred in holding Federal liable on its insurance policy. Conrail did not file a notice of appeal. We affirm.

## FACTS

Respondent Loram leased a ballast cleaner to respondent Conrail. During the lease period in August 1978 while operating on a Conrail track, the ballast cleaner was damaged by fire. The equipment was, however, on a siding at the exact time of the fire where Loram employees were performing routine maintenance. Loram also provided operators to run the ballast cleaner.

Loram was insured with the Home Insurance Co. (Home). That policy provided in a separate endorsement:

*Insurance for Leased or Rented Equipment*

In consideration of the reduced premium for which this policy has been issued, it is understood and agreed that the insurance provided by this policy shall not apply to loss or damage to equipment * * leased or rented to others by the insured unless the insured is unable to recover from the lessee or renter of such equipment for such loss or damage. * * * [T]he coverage provided hereunder is expressly contingent upon Loram * * * entering into a lease agreement which agreement shall provide that the lessee or renter of such equipment shall provide insurance covering such equipment or shall reimburse Loram * * * for any loss or damage to such equipment.

It is further understood and agreed that in no event shall insurance under this policy insure to the benefit of the lessee, renter or his insurance underwriters nor relieve any other person, company or corporation of the obligations under the provisions of the lease or rental agreement.

The insured under this policy hereby agrees to use all reasonable means including but not limited to legal recourse, to recover or collect from the lessee, renter and/or his insurance carrier, the full amount of loss or damage due the insureds.

The lease between Conrail and Loram reflected this agreement with Home. It provided that Conrail was obligated to insure the equipment adequately and was responsible for damage from *any cause* while the equipment was in its possession or control. It also provided that Conrail should inform Loram about all insurance policies covering the equipment.

Conrail obtained coverage for the shoulder ballast cleaner through Federal, but apparently did not tell Loram about the policy until November 1980, nor did it notify Federal about the fire until that time.

After the fire, Loram repaired the machine and submitted a claim to Home for $181,143.02. In October 1979, more than a year after the fire, Home informed Loram that it would not pay under the policy until Loram had pursued its claim against Conrail.

In February 1980, Loram brought an action against Conrail, and during discovery learned of the existence of the Federal policy. Loram immediately notified Federal of the claim, and Federal was added as a defendant in April 1981.

Federal denies coverage on the ground that the policy contained a limitations period as follows:

> No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim * * *.

It also claims that Conrail is not liable for the loss because the machine was not in Conrail's "possession or control" within the meaning of the lease.

The trial court found that (1) Conrail was in legal possession of the machine during the term of the lease agreement; (2) Conrail was liable to Loram for all damage to the machine "whether within the control of [Conrail] or not," as provided in paragraph 13 in the lease; (3) Loram was a loss payee under the Federal policy; (4) the 12-month limitation period in the policy applied only to insureds, not to loss payees; and (5) under the terms of the policy, Federal is liable to Loram for all damages to the machine.

## ISSUES

1. Is Conrail barred from challenging a judgment entered against Conrail and Federal, when Conrail failed to join Federal's appeal or file its own timely notices of appeal or review?

2. Was the shoulder ballast cleaner in Conrail's possession or control within the meaning of the lease?

3. Does Federal's policy cover the loss even though it was not sued upon within 12 months?

## ANALYSIS

### I.

■ The trial court ordered judgment against Conrail and Federal for $214,-301.89, which includes the cost of repairs plus prejudgment interest dating back to November 1980. The judgment was entered on December 1, 1983. Federal's notice of appeal was served on Conrail December 23, 1983. Conrail did not join the appeal or file a separate notice of appeal. It filed a notice of review on April 16, 1984, more than 15 days after service of the notice of appeal. See Minn.R.Civ.App.P. 103.02, 104.01, 106. The judgment is therefore final against Conrail.

### II.

Federal contends that Conrail did not possess or control the equipment because it was on a siding, not on the track, when the fire occurred.

However, Conrail leased the equipment and controlled its movement. In any event, the lease itself made Conrail fully responsible for the damage from any cause whether in its control or not, and Conrail agreed that only Loram's employees could operate or maintain the cleaner.

Any other construction would lead to the unreasonable result of responsibility for accidental losses shifting back and forth depending on the activity of the machine. Nothing in the lease suggests an intent to shift the risk of loss several times a day.

■ The trial court found Conrail to be in possession. The evidence substantially supports that conclusion.

### III.

The issue which Federal characterizes as paramount in this case is whether Loram's action is barred by the limitations period in its policy. The policy provision reads as follows:

> No suit, action, or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after *discovery by the insured* of the occurrence which gives rise to the claim * * *.

Loram claims that this provision does not apply to it because it is a loss payee, not an insured. The policy refers to the *insured* several times and makes no reference to the *loss payee*. Federal contends that because the loss payable clause is an "open" clause (not an independent contract between loss payee and the insurer as a "standard" clause is), the loss payee's rights are derivative, and if the recovery is lost by the acts or omissions of the insured, it is lost to the loss payee.

Federal cites several cases where the limitation period applied to the loss payee. In two cases cited by Federal (*Posner v. Fireman's Insurance Co.*, 49 Ill.App.2d 209, 199 N.E.2d 44 (1964) and *Aetna Insurance Co. v. O.E. Woods Lumber*, 182 Okl. 65, 76 P.2d 273 (1938)), the loss payable clause included the phrase "subject nevertheless to all the terms and conditions of the policy." In another case cited by Federal (*Howe v. Mill Owners' Mutual Fire Insurance Co.*, 241 App.Div. 336, 271 N.Y.S. 639, 642 (1934)), the policy contains a standard clause, not an open one.

■ Technically, it would seem that one could construe the policy so as to limit the limitation period only to the insured. In *Prior Lake State Bank v. National Surety Corp.*, 248 Minn. 383, 80 N.W.2d 612 (1957), the court said:

> The parties to a contract may limit the time within which an action may be brought to a period less than that fixed by the general statutes of limitation provided the limitation is not unreasonably short, but such provisions are not especially favored and are construed strictly against the party invoking them.

*Id.* at 388, 80 N.W.2d at 616. Based on this case, the court could justifiably construe the limitations period as applying only to insureds. When language of an insurance policy is ambiguous, it must be given the meaning which is favorable to the finding of insurance coverage. *See Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820, 822 (Minn.1983); *Iverson v. State Farm Mutual Automobile Insurance Co.*, 295 N.W.2d 573, 575 (Minn.1980).

■ However, even if such limitation clauses could be interpreted to apply to loss payees, we conclude that it should not be enforced against Loram absent a showing of prejudice to Federal. The Minnesota Supreme Court has held that in the absence of prejudice to the insurer, untimely notice will not absolve the insurer of liability. *See Reliance Insurance Co. v. St. Paul Insurance Cos.*, 307 Minn. 338, 239 N.W.2d 922 (1976) (a lawyer's professional liability policy required notice "as soon as practicable"); *Farrell v. Nebraska Indemnity Co.*, 183 Minn. 65, 235 N.W. 612 (1931) (an automobile policy required "immediate written notice").

In *Terrell v. State Farm Insurance Co.*, 346 N.W.2d 149 (Minn.1984), the Supreme Court held that the six-month notice period in the Minnesota No-Fault Act is mandatory, even though the insurer was not prejudiced by untimely notice. However, the court also stated:

> Were it not for the fact that section 65B.55, subd. 1, specifically authorizes an insurer to insert this type of notice provision in its policy, we would have no difficulty in rejecting appellant's contentions. In our view the public policy reasons underlying the requirement of showing insurer prejudice as set forth in *Reliance* and *Farrell* are not only precedential, and thus would control the disposition of this case by affirmance, but more importantly, those policy reasons would ordinarily compel affirmance in order to avoid injustice.

*Id.* at 151. In other words, where the legislature authorizes a limitation period it is an absolute bar. Where such a limitation is prescribed only by a policy, prejudice must be shown.

There was no showing of prejudice in this case. Liability was absolute, and no issue existed as to the amount of damages. Therefore, we conclude that the loss by Loram is covered by the Federal policy.

## DECISION

Affirmed.